# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      vs.                                       No. CR 05-2045 LH

NATHAN ARCHULETA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Void the Search Warrant and the Fruits of the Search [Motion] (Docket No. 13), filed October 13, 2005.  The Court, having considered the Motion, the memoranda of the parties, and the applicable law and otherwise being fully advised, finds that the Motion is not well taken and will be **denied**.

The search warrant in this matter was issued as part of an investigation into a shooting that took place shortly before 9:30 p.m on August 7, 2005, at Brookside Park in Farmington, New Mexico.  Six people were injured, including a one-year-old girl and an adult male who was critically injured and was not expected to survive.  Apparently, no one at the park saw the shooter or shooters, but Detective Brandon Lane of the Farmington Police Department obtained a search warrant for Defendant's home and car.  The warrant was executed on the morning of August 8th and police found an inoperable handgun magazine in a vehicle in the driveway, an unloaded handgun with no

magazine between the mattresses in a bedroom believed to have been used by Defendant, .22 cartridges in a pair of pants in that room, and in another room a rifle later determined to belong to Defendant's father.

Defendant was arrested and initially held on suspicion of attempted murder in the park shooting.  The seized firearm, however, was determined not to have been used in the shooting and Defendant has not been charged in that crime.  Defendant subsequently was indicted in the United States District Court for the District of New Mexico and charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   (Redacted Indictment (Docket No. 9), filed September 13, 2005.)  Defendant requests that the Court void the search warrant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), claiming that false statements necessary for a finding of probable cause were knowingly and intentionally or with reckless disregard for the truth made by the affiant.  He also argues that  the search warrant as written lacks probable cause on the face of the affidavit.

Pursuant to *Franks*,

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a search warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155-56.  Further embellishing its holding, the Court concluded:

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.  To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.  Whether he will prevail at that hearing is, of course, another issue.

*Id.* at 171-72.

Although *Franks* makes clear that it is the truthfulness of the affiant, and not that of any

informant, that may be impeached, the Court also reiterated then established law that

[i]f an informant's tip is the source of information, the affidavit must recite "some of the underlying circumstances from which the informant concluded" that relevant evidence might be discovered, and "some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his information 'reliable.'"

*Id.* at 165 (quoting *Aguilar v. Texas*, 378 U.S. 108, 114 (1964)); *cf. Illinois v. Gates*, 462 U.S. 213

(1983)(abandoning two-pronged test established by *Aguilar* and *Spinelli v. United States*, 393 U.S.

410 (1969), and adopting "totality-of-the-circumstances analysis" for probable cause determinations).

Additionally, however, the Court noted that

"[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and

3

upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be gathered hastily.

*Franks*, 438 U.S. at 164-65 (alteration in original)(quoting *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)(emphasis in original)).

The Tenth Circuit extended *Franks* in *United States v. Knapp*, holding that "it is a Fourth Amendment violation to knowingly or recklessly *omit* from an affidavit information that would have vitiated probable cause." 1 F.3d 1026, 1029 (1993)(citing *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990)). Regarding the defendants burden to show that any potential inaccuracies in an affidavit are deliberate falsities on the part of an affiant, the court noted that "'[i]t is not enough to show that the informant lied to an unsuspecting affiant, or that an affiant's negligence or innocent mistake resulted in false statements in the affidavit.'" *Id.* (quoting *United States v. Owens*, 882 F.2d 1493, 1499 (10th Cir. 1989)). Therefore, "as long as the affidavit reflected what [the affiant] believed to be true, the warrant was properly issued." *Id.*

In *Gates v. Illinois* the Supreme Court reaffirmed the "totality-of-the-circumstances" approach that had traditionally informed probable cause determinations, in place of the rigid "two-pronged test" under *Aguilar* and *Spinelli* for determining whether an informant's tip establishes probable cause for issuance of a warrant:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)(alteration in original)).

Thus, while

> an informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his report[,] these elements should [not] be understood as entirely separate and independent requirements to be rigidly extracted in every case[.] Rather, . . . they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause to believe that contraband or evidence is located in a particular place."

*Id.* at 230.

Probable cause, then, "is a fluid concept -  turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232.  The standard is a "'practical, nontechnical conception,'" *id.* at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)),  permitting "a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip . . . ," *id.* at 234.  It follows that the reviewing court should pay great deference to the magistrate's determination of probable cause, and "should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.* at 236 (alterations in original)(quoting *United States v. Ventresca,* 380 U.S. 102, 109 (1965)).  Thus, "[i]t is enough, for purposes of assessing probable cause, that 'corroboration [of an anonymous informant's information] through other sources of information reduce[s] the chances of a reckless or prevaricating tale,' thus providing a 'substantial basis for crediting the hearsay,'" and for affirming issuance of a warrant. *Id.* at 244-46 (quoting *Jones*, 362 U.S. at 269).

Defendant maintains that two critical portions of Detective Lane's affidavit in support of the

Archuleta search warrant constitute *Franks* violations. The first reads:

> [As the investigation progressed four separate citizens who wished to remain anonymous contacted authorities with suspect information.] The first caller was a confidential informant of Officer O'Donnell of the Farmington Street Crimes Unit. Officer O'Donnell has received reliable information from this particular informant on past occasions. This confidential informant identified the *shooter* by name as Nathan Archuleta and the leader of a street gang identified as Tortilla Flats.

(Def.'s Mot. Void Search Warrant and Fruits of Search, Ex. A, New Mexico v. Archuleta, Aff.

Search Warrant [Archuleta affidavit] at 2 (emphasis added)(alteration in original, but not quoted by

Defendant), and the second:

> Officers contacted Nathan Archuleta at this address and he was *uncooperative* with their investigation.

(*id.* at 3 (emphasis added)). Regarding the first alleged untruthful statement, Defendant argues that

Detective Lane's use of the word "shooter" in the quoted portion of the Archuleta affidavit is false

and that Detective Lane then knew it to be false as evidenced by his use of the word "suspect" in  a

subsequent  affidavit for a different search warrant:

> [As the investigation progressed several citizens provided authorities with suspect information.] The first was a confidential informant of Officer O'Donnell of the Farmington Street Crimes Unit. This informant contacted Officer O'Donnell within two hours of the shooting. Officer O'Donnell has received reliable information from this particular informant on past occasions but this person also provided information that was later confirmed in this particular case. This confidential informant identified three *suspects* by name as Alex Wenger, Jeremy Archuleta, and Nathan Archuleta. Nathan Archuleta was also named as the leader of a south Farmington street gang called Tortilla Flats. . . .

(*Id.* Ex. B (New Mexico v. Wenger, Aff. Search Warrant, Aug. 30, 2005) (emphasis added)

(alteration in original, but not quoted by Defendant).) Defendant then submits that the Archuleta

affidavit should be altered to read:

[As the investigation progressed four separate citizens who wished to remain anonymous contacted authorities with suspect information.]  The first caller was a confidential informant of Officer O'Donnell of the Farmington Street Crimes Unit. Officer O'Donnell has received reliable information from this particular informant on past occasions.  The informant *identified three suspects by name as Alex Wenger, Jeremy Archuleta and Nathan Archuleta.*

Defendant cites a supplemental narrative by Detective Corporal Robert Perez, dated August 10, 2005, in support of his allegation that Det. Lane untruthfully stated that Defendant was "uncooperative" when officers came to his home the night of the shooting:

> After completing the initial investigation at the hospital, I requested that we proceed to the Farmington Police Department in order to begin coordinating the information known to this point.  I requested to know who else was out and who was coordinating the investigative effort.  Det. Lane informed me that Det. Smerglia was out and had assisted Det. Brown at the crime scene.  Sgt. Burch was also out and he had joined the Street Crimes Unit and was assisting them to search for and interview suspects.  While at the hospital, Det. Lane spoke with Sgt. Burch and had been informed that they contacted Nathan Archuleta at his residence.  Sgt [sic] Burch conducted a brief interview and obtained information related to an alibi that Archuleta provided.  It was unclear if a request was made for Archuleta to come into the Farmington Police Department (FPD) for a detailed statement or if a Gunshot Residue collection was requested.  I contacted Sgt. Burch back and asked if this had been done.  He informed me that Archuleta denied involvement so neither request was made.

(*Id.* Ex. C.)  In further support of his assertion that he was not uncooperative, Defendant also submits his mother's affidavit, (*id.* Ex. D), and copies of receipts, (*id.* Ex. E), which allegedly prove that he was shopping when the shooting occurred.  Based on this information, Defendant maintains that the sentence stating that Defendant was "uncooperative" should be deleted from the affidavit and substituted with the following:

> Police officers contacted Nathan Archuleta at his residence.  Sgt. Burch conducted a brief interview and obtained information related to an alibi that Archuleta provided. Archuleta denied involvement in the shooting.

In his reply brief Defendant belatedly propounds a third *Franks* violation in the omission of the fact that the police kept his house under constant surveillance following the interview at about 1:00 a.m.

Defendant contends that as "corrected," Detective Lane's affidavit does not provide a reasonable basis for the magistrate to have signed the warrant.  He maintains that there is no statement that Defendant was identified by anyone as the shooter and if the magistrate had not been told that Defendant was uncooperative and had known that Defendant "had an alibi" for the time of the shooting, he would not have issued the warrant.

Defendant mentions a number of other issues regarding the affidavit.  He argues that although the affidavit contains a description of a vehicle that is similar to his and he admittedly does have a goatee, the description by witnesses of the individual in the vehicle as a dark-skinned, heavy set, Hispanic male with a goatee does not fits him because he is not a dark-skinned or heavyset Hispanic male.  Defendant further attacks the affidavit for not containing a recitation of the underlying circumstances from which the first informant reached his conclusion or how he knew anything about the shooting.  Defendant argues that because of the discrepancies in affidavits of August 8th and August 30th, the Court should require Detective Lane to disclose all cases in which the informant previously was shown to be credible and reliable, how his information resulted in arrests or prosecutions, and all circumstances when the informant was unreliable or his information failed to lead to discovery of evidence or the arrests or convictions, or at least that it should conduct an *in camera* interview of the confidential informant.  Defendant further contends that if information from the informant was accurately described in the August 8 affidavit, then the informer was not reliable about Defendant being the shooter because the seized firearm was not used in the shooting and Defendant has not been charged with any crime related to the shooting.

8

The Court is not convinced that the distinctions drawn by Defendant between "shooter" or "suspect" and "uncooperative" or "cooperative" show that Detective Lane made a false statement in any manner at all, much less, knowingly and intentionally, or with reckless disregard for the truth. Furthermore, even if the Court were to so find, the allegedly false statements are in no way necessary to the finding of probable cause.

Indeed, even striking the portions of the affidavit to which Defendant objects and inserting his proposed "corrections," ample cause exists on the face of the affidavit to justify issuance of the search warrant. With the Defendant's "corrections" underlined, the information in the affidavit may be summarized as follows:

Two identified witnesses to the shooting told Officer Dougherty that they saw an older black Cougar passenger car driving in the area immediately before the shots were fired and described the driver as a dark skinned, heavy set Hispanic male with a goatee beard. The first of four citizens who wished to remain anonymous [the confidential informant whose information is challenged by Defendant], who had provided Officer O'Donnell with reliable information on past occasions, identified Defendant as one of three named suspects and named him as the leader of the Tortilla Flats street gang. The second anonymous source, who had received information from a family member who did not want to come forward, identified the suspect by the first name "Nathan," and with the street name of "Enemy." This witness also stated that the shooting was possibly in retaliation for a fight in which "Enemy" was beaten up by "South Side Loco" gang members. Detective Lane noted that victims of the park

9

shooting were reportedly associated with the "South Side Locos."   The third anonymous citizen was a relative of a victim and did not want to be identified out of fear of retaliation.   This informant described the shooter by the street name of "Enemy."   Detective Lane further stated that the Farmington Police Street Crimes Unit confirmed this street name as a gang moniker of Defendant, a member of Tortilla Flats.  The fourth anonymous citizen called in the information that the shooter's name was "Enemy," and that he was a member of Tortilla Flats.  Detective Lane contacted another identified witness at the San Juan Regional Emergency Department who told him she was in the park parking lot when the shooting occurred. After the shooting she went to the hospital and saw a black two-door car drive by very slowly while its occupants, who she believed were the shooters, screamed "South Side sucks!" at the crowd outside the emergency room.   She had not seen this vehicle at the park, however.  Detective Lane obtained a booking photo of Defendant and determined that his physical characteristics matched those given by the witnesses who saw the driver of the black Cougar at the park.  He also learned from the Street Crimes Unit that a 2001 dark blue, two-door Mercury Cougar was registered to Defendant and confirmed that a vehicle matching that description and with the same New Mexico license plate number was parked in the driveway at Defendant's residence.  Police officers contacted Defendant at his residence and conducted a brief interview with him.  Defendant denied involvement in the shooting and provided information related to an alibi.  Officers continued surveillance of the automobile following the interview.

Based on this information Detective Lane believed that probable cause existed to seize and search Defendant's vehicle for evidence of the park shooting. He also believed that evidence from the vehicle might have been moved into the house and requested permission also to search the residence. The magistrate found probable cause to issue the warrant on the basis of the "uncorrected" affidavit, as would this Court. Even as "corrected," there is little room, if any, for argument that probable cause for issuance of the search warrant does not exist.

No fewer than seven individuals provided information concerning the shooting at the park to the police. Three identified witnesses described a vehicle similar to Defendant's car as being at the park immediately before the shooting or at the hospital thereafter. Two of these witnesses identified a suspect closely matching Defendant's appearance in a photograph Detective Lane subsequently obtained - a heavy-set Hispanic male with a goatee. Defendant, an Hispanic male with a goatee, was listed on his booking photo on August 8, 2005, as being five feet seven inches tall and weighing 195 pounds. (Defendant's [sic] Notice of Attachment (Docket No. 20), filed Nov. 3, 2005, Government Ex. 3 at 2.) Whether he also may be described as "dark skinned" is a matter the Court need not address. As the *Franks* Court noted, a truthful showing to establish probable cause "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be gathered hastily." Defendant offers no reason for the Court to find that Detective Lane did not believe or appropriately accept this information as true.   438 U.S. at 165; *see also Knapp*, 1 F.3d at 1029.

All four of the anonymous informants identified Defendant by his real name, Nathan or Nathan Archuleta, or his street name, Enemy, and as a gang member. Two of these individuals, in addition

11

to the contested confidential informant, identified "Enemy" as the "shooter."   Detective Lane confirmed the information regarding Defendant's gang membership and gang moniker with the Farmington Police Street Crimes Unit.  Given the number of informants providing similar information and the corroboration of that information by Detective Lane with other officers and sources, probable cause clearly exists to support issuance of the search warrant, despite Defendant's claim of innocence and purported alibi.  See *Gates*, 462 U.S. at 245 n.13 ("probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity").

Thus, Defendant fails to meet his burden under *Franks* in any respect and even as "rewritten" by Defendant the affidavit contains more than sufficient content to support a finding of probable cause.


WHEREFORE,

**IT IS HEREBY ORDERED** that Defendant's Motion to Void the Search Warrant and the Fruits of the Search (Docket No. 13), filed October 13, 2005, is **DENIED**.

/S/  C. LeRoy Hansen
UNITED STATES DISTRICT JUDGE